IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES STURGILL, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 15-1195 |
| | : | |
| CAROLYN W. COLVIN, | : | |
| ACTING COMMISISONER OF | : | |
| SOCIAL SECURITY, | : | |
| Defendant. | : | |

**Jones, II    J.**                                                                                              **August 23, 2016**

## MEMORANDUM

Before the Court are the Objections of Charles Sturgill ("Plaintiff"), (Dkt No. 14 [hereinafter Objs.]), to the Report and Recommendation ("R&R") from the Honorable Carol Sandra Moore Wells, United States Magistrate Judge. (Dkt No. 13 [hereinafter R&R].) After careful consideration of the full record, Plaintiff's Objections, (Objs.), and the Acting Commissioner of the Social Security Administration's Response, (Dkt No. 16 [hereinafter Objs. Resp.]), the Court overrules Plaintiff's objections, adopts Judge Wells' R&R in its entirety, and orders that Plaintiff's request for review is denied.

### I.    Standard of Review

Objections to the Magistrate Judge's R&R are entitled to *de novo* review. 28 U.S.C. § 636(b)(1)(C). However, the review of a final decision of the Commissioner of Social Security is deferential and is limited to determining whether the Commissioner's decision is supported by substantial evidence. 32 U.S.C. §§ 405(g), 1382(c)(3); *see also Jenkins v. Comm'r of Soc. Sec.*, 192 F. App'x 113, 114 (3d Cir. 2006). Substantial evidence is difficult to precisely define; it "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 522, 565 (1988)). In terms of the traditional burden of proof standards, substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971). In determining the existence of substantial evidence to support an ALJ's decision, this Court must consider all evidence of record, regardless of whether the ALJ cited to it in her decision. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

## II. Background

### a. Procedural History

Plaintiff is a forty-nine year old man who completed his education through eleventh grade in special education classes due to dyslexia. (Dkt No. 6, Administrative Record [hereinafter R] at 196; 70-71, 213, 215.) Plaintiff previously worked as an assembler at an automotive plant, a horse tender, and a part-time truck driver. (R at 42-47.) Plaintiff claims that he became unable to work on June 17, 2008 due to the removal of a tumor, floating ribs, a reconstructed right shoulder, crushed left shoulder, back injury, arthritis, numbness along the entire right side of his body, and hypertension. (R at 81.) On June 16, 2011, Plaintiff filed an application for disability insurance benefits ("DIB"). (R at 14.) The Social Security Administration initially denied the application after finding Plaintiff was not disabled under its rules. (R at 113.) Plaintiff filed a timely request for hearing. (R at 117-18.) An administrative hearing was held before the Honorable Frederick Timm, Administrative Law Judge ("ALJ"), on April 15, 2013. (R at 34.) On April 26, 2014, the ALJ found that Plaintiff was not disabled, however, that decision was vacated to permit the submission of additional evidence. (R at 14.) Additional evidence was received and on November 15, 2013, the ALJ again found that Plaintiff was not disabled. (R at 19, 29.) Plaintiff timely appealed the ALJ's decision to the Appeals Council. (R at 1-5.) The Appeals Council affirmed the decision of the ALJ, thereby denying Plaintiff's request for review. (R at 1-5.) Plaintiff timely filed this action in Federal Court. (Dkt No. 1.)

The parties filed Plaintiff's Brief and Statement of Issues in Support of Request for Review, (Dkt No. 9 [hereinafter Br.]), Defendant's Response, (Dkt No. 10 [hereinafter Resp.]), and Plaintiff's Reply (Dkt No. 11 [hereinafter Reply]). The Honorable Carol Sandra Moore Wells, United States Magistrate Judge ("USMJ"), filed a Report and Recommendation affirming the ALJ's ruling, and denying Plaintiff's request for review. (Dkt No. 13 [hereinafter R&R].) Plaintiff timely filed objections thereto. (Dkt No. 14 [hereinafter Objs.].) Defendant responded to the Objections. (Dkt No. 16 [hereinafter Objs. Resp.].)

### b. ALJ's Opinion

The ALJ found that Plaintiff had severe impairments including degenerative disc diseases status/post thoracic spine surgery and degenerative joint disease of the bilateral shoulders status/post surgery. (R at 17.) These impairments, neither alone nor in combination, were of

sufficient severity to qualify as a listed impairment. (R at 19.) The ALJ found that Plaintiff "had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), except that he can never climb ladders, roped, or scaffolds, only occasionally climb ramp/stairs, stoop, crouch, crawl, kneel, and balance, must avoid concentrated exposure to extreme cold, wetness, humidity, vibrations, and hazards, and can only occasionally handle, reach, finger, and feel with his dominant right upper extremity. He can perform unskilled work that is goal-oriented rather than production paced" (R at 19.)

### c. Objections

Plaintiff makes two objections that the USMJ incorrectly affirmed the ALJ's decision because: (1) the ALJ rejected medical opinion evidence without good reason or adequate explanation and (2) the ALJ rejected Plaintiff's testimony without good reason or adequate explanation. As to the first objection, Plaintiff narrows his objection to the ALJ (a) giving little weight to the opinion of Plaintiff's treating physician, Richard F. Satriale, M.D., regarding restrictions on lifting and carrying, (b) giving little weight, without explanation, to the opinion of Plaintiff's treating physician, Richard F. Satriale, M.D., regarding crouching, (c) giving little weight to the opinion of treating physician Kevin McCabe, D.O., and (d) giving great weight to the opinion of the state agency consultants. These objections are identical to the arguments raised before the USMJ. (R&R at 9.)

## III. Discussion

### a. The ALJ committed no error in rejecting the opinion of Plaintiff's treating physician, Dr. Satriale, regarding lifting and carrying limitations. The Court affirms the opinion of the USMJ.

A treating physician's opinion is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the record]." 20 C.F.R. § 404.1527(c)(2). The ALJ may reject a treating source's opinion only "on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)).

In considering whether or not to afford a treating physician's opinion great weight, the ALJ should consider: (1) the length of the treatment relationship and the frequency of

examination; (2) the treatment the source has provided and the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories; (3) the relevant evidence to support the opinion; (4) the consistency of the opinion with the entire record; (5) whether the doctor is a specialist in the area in which he or she is offering the opinion; (6) other factors which support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)(i)-(ii), (c)(3)-(6). Simply put, an ALJ is "not free to employ [his or her] own expertise against that of a physician" if that physician "presents competent medical evidence." *Plummer*, 186 F.3d at 429.

Plaintiff objects that "the ALJ improperly rejected expert medical opinion evidence on the basis of the ALJ's lay medical judgment" regarding lifting and carrying limitations. (Objs. at 2.) Plaintiff made this same argument before the USMJ. The USMJ reviewed the medical evidence in the administrative record and found that the ALJ "gave great weigh to Dr. Satriale's assessment of Plaintiff's limitations, in general, finding it consistent with the record, but gave little weight to the lift/carry limitation found by Dr. Satriale (2-3 pounds frequently, 10 pounds occasionally, R. 276), because it was not supported by record evidence including Dr. Satriale's own treatment notes, hospital records, and Plaintiff's reported activities. R. 27, citing R. 276-96 (Dr. Satriale's treatment notes), 297-351 (Brandywine Hospital Records)." (R&R at 11.) The Court agrees with the USMJ. The ALJ fully explained his basis for his decision to afford little weight to Dr. Satriale's opinion regarding lifting and carrying:

> In general, Dr. Satriale's assessment is given great weight because it is consistent with and supported by the record as a whole. However, in terms of the assessed lift/carry limitations, Dr. Satriale's assessment is accorded little weight because it is inconsistent with the objective evidence, with treatment notes, and with the claimant's reported range of activities (Exhibits B4F, B5F). Dr. Satriale's own reports (Exhibit B4F) fail to reveal the type of significant clinical and laboratory abnormalities one would expect if these limitations existed, and the doctor did not specifically address this weakness.

(R at 27.) Plaintiff objects that the ALJ's conclusion that "Dr. Satriale's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect to if these limitations existed" reflects medical judgment. The court reviews the record for substantial evidence.

First, the Court looks to Dr. Satriale's report itself. The Court notes that where asked to include supportive medical findings to explain limitations on lifting and carrying, if not

4

otherwise included the report, Dr. Satriale included no explanation. Therefore, the ALJ was left to the report itself, which included numerous emergency room records and diagnostic results.

A clinical report from an emergency room visit on April 10, 2011, which was also included in Dr. Satriale's file, indicates that Plaintiff was injured while moving trees. (R at 290.) On June 2, 2011, Plaintiff was directed by Dr. Satriale to stop heavy lifting. (R at 280.) A clinical report from an emergency room visit on June 2, 2011, also included in Dr. Satriale's file, indicates that Plaintiff exhibited no weakness. (R at 293.) A clinical report from an emergency room visit on August 26, 2011, which also included in Dr. Satriale's file, indicates that Plaintiff was injured while boating. (R at 315.) The CT scan from that date indicates "[n]o evidence of acute fracture or dislocation was noted." (R at 319.) A clinical report from an emergency room visit on September 28, 2011, also included in Dr. Satriale's file, indicates that Plaintiff was injured while lifting and turning a mattress. (R at 295.) Plaintiff was instructed in his discharge papers not to lift greater than five pounds for three days, without any limitations indicated beyond that time period. (R at 313.)

A clinical report from an emergency room visit on November 20, 2011, also included in Dr. Satriale's file, indicates that Plaintiff was injured while on his tractor taking down a broken tree limb. (R at 297.) That same report again indicates that Plaintiff does not suffer from any weakness. (R at 297.) Later in the report, the treating physician expressed concerns over a negative CT scan and the timing of Plaintiff's visits indicating narcotic abuse; Dr. Satriale agreed and indicated Plaintiff would be discharged from his practice. (R at 300.) Security was needed to discharge Plaintiff from Emergency Room; based on behavior nurse withdrew limited prescription for 5 pills of oxycodone. (R at 301.) Plaintiff called nursing supervisor to complain about removal of prescription and was slurring speech. (R at 301.) Plaintiff was told a catheter was necessary to empty his bladder, which was reaching capacity and could rupture, but Plaintiff refused and instead signed Against Medical Advice (AMA) papers. (R at 301.) Dr. Satriale then ceased to act as Plaintiff's Primary Care Provider.

The ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429. Here, Dr. Satriale did not provide a supporting explanation, but left the ALJ to examine the report as a whole. (R at 276.) The ALJ indicated that Dr. Satriale's assessment is given little weight because it is "inconsistent with the objective evidence, with treatment notes, and with the claimant's

reported range of activities (B4F, B5F)." This Court finds substantial evidence in the record to support the ALJ's conclusion. The claimant's reported range of activities, which involved fishing,[1] flipping a mattress, and using a tractor to remove a tree limb, alone provides substantial evidence to assign less weigh Dr. Satriale's opinion. In addition to Plaintiff's activities of which Dr. Satriale was aware are the treatment notes finding no weakness even after injury and imposing restrictions only on heavy lifting or for a very limited period of time after an injury. Finally, there are diagnostic results indicating Plaintiff's injuries are not acute, which in fact led in part to his removal from Dr. Satriale's practice and the Brandywine Hospital Emergency Room. Beyond the evidence of which Dr. Satriale's report contained, there is evidence in the Record that Plaintiff himself states that he can lift ten to fifteen pounds without being in pain afterwards. (R at 57.) Therefore, as the ALJ explained, objective evidence, treatment notes, and claimant's reported range of activities provide substantial evidence for crediting less weight to Dr. Satriale lift/carry limitations. The Court overrules Plaintiff's objection.

> **b. The ALJ committed harmless error in rejecting without explanation the opinion of Plaintiff's treating physician, Dr. Satriale, regarding crouching. The Court affirms the opinion of the USMJ.**

"When a conflict in the [medical] evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993)). "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Id.* (citing *Stewart v. Secretary of H.E.W.,* 714 F.2d 287, 290 (3d Cir. 1983)). Here, the ALJ rejected or afforded little weight to Dr. Satriale's opinion that Plaintiff can never crouch in favor of the opinions of Drs. Reardon and Sarpolis who both found that Plaintiff could occasionally crouch. (R at 81-90, 355-60.) The ALJ, however, did not specifically explain the rationale behind this decision. (R at 27.)

---

[1] Plaintiff takes issue with using Plaintiff's past fishing and hunting to support the ALJ's decision to afford less weight to Dr. Satriale's opinion regarding lifting and carrying because "the ALJ did not inquire into the lifting and carrying involved in Plaintiff's hunting of fishing." (Objs. At 5.) Although the ALJ inquired into Plaintiff's activities, Plaintiff's counsel was also afforded an opportunity to present questions to Plaintiff. In fact, the ALJ specifically asked Plaintiff's attorney "Counselor, do you have followup [sic] before I go to the vocation al expert?" and Plaintiff's Counsel said "No, I do not, Your Honor." (R at 68.) The ALJ must consider all the evidence unless he provides an explanation for discounting the evidence, but the ALJ cannot consider evidence Plaintiff failed to put into the record. If Plaintiff fishes and hunts (which carries the implication that a fishing rod and tackle were carried and a rifle and ammunition were carried) without carrying or lifting any objects, the ALJ cannot be expected to take that into account without Plaintiff offering that evidence. The burden is on Plaintiff to develop the record to show that his impairments are severe, not the ALJ. *Plummer*, 186 F.3d at 428 (If the claimant fails to show that her impairments are 'severe,' she is ineligible for disability benefits.").

The USMJ found that, despite the failure to include a specific explanation, because the decision was nonetheless supported by substantial evidence, the error was harmless. (R&R at 13.)

Plaintiff recognizes that he has the burden to show that any error was not harmless, and argues that "Plaintiff met this burden by showing the inconsistency between Dr. Satriale's opinions and the ALJ's findings."  (Objs. at 7.) But Plaintiff makes no argument that any such error was outcome determinative. For example, the Plaintiff does not posit that, if the ALJ had found that Plaintiff cannot in fact crouch occasionally as Dr. Satriale opined, Plaintiff would no longer be able to perform the occupations identified for him. (Objs. at 7.) In any event, because the Court agrees with the USMJ that the failure to explain why the ALJ adopted the position of Drs. Reardon and Sarpolis over Dr. Satriale is error, [2] the Court will review the Record to determine whether that error was harmless.

First, the Court notes that the ALJ did not ignore any evidence. The ALJ recognized that Dr. Satriale indicated that the Plaintiff can never crouch. (R at 27.) The ALJ also recognized that in a Physical Assessment on March 22, 2012, Dr. Sarpolis, a State agency consultant, indicated that Plaintiff can occasionally crouch and that Dr. Reardon concluded the same. (R at 27.) The ALJ then explains that he accords great weight to the assessments of Drs. Sarpolis and Reardon because their assessments are consistent with the record as a whole. Although he does not specifically explain why he weighs their finding that Plaintiff can occasionally crouch over Dr. Satriale's finding that Plaintiff can never crouch, he generally explains the creditworthiness of Drs. Sarpolis and Reardon. (R at 27.) This is not a case where the ALJ makes no mention of the contradictory findings and seemingly ignores contrary evidence. *Compare Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000).

Second, while the ALJ's explanation may not be as explicit as possible, it does account for the ALJ's decision not to give great weight to Dr. Satriale's opinion in a manner that assures the Court that any failure to give an explicit explanation was harmless. The ALJ accorded the assessments of Drs. Sarpolis and Reardon great weight because:

---

[2] Although the Court takes the approach more favorable to Plaintiff and follows the findings of the R&R, the Court notes that the ALJ is only required to give *some* reason for discounting the rejected evidence. *Plummer*, 186 F.3d at 429. Because Defendant concedes to the USMJ's finding on this issue, (Objs. Resp. at 5), and because any finding of error is nonetheless harmless, the Court will not reexamine whether the ALJ erred in failing to specifically explain its reason for discounting Dr. Satriale's opinion. FED. R. CIV. P. 72(b)(3).

> [T]hey are consistent with the record as a whole (Exhibits B4F, B5F, B9F, B10F). During physical examinations, it was consistently noted that the claimant had full range of motion of the bilateral upper and lower extremities, intact sensation, motor strength of 5/5, and ability to ambulate without a medically required hand held assistive device (Exhibits B4F, B5F, B9F, B10F). Additionally, these assessments are consistent with the claimant's reported range of activities and his routine and conservative treatment, and founded upon considerable program expertise.

(R at 27.) As a result, the ALJ concluded that the assessment was supported by the objective medical evidence contained in the record. A review of the Record demonstrates substantial evidence for this decision, which renders the error harmless.

As the Court previously recognized, the ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429. Dr. Satriale's only opinion regarding Plaintiff's ability to crouch is included on the form titled "Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities," which specifies that the opinions "should be based on clinical signs and laboratory findings." (R at 276.) Under the section "Postural Activities," the medical source is posed the following "How frequently can the individual perform the following activities? Please specify the nature and degree of any limitation." Dr. Satriale checked the box next to "Crouching" indicating "Never." (R at 277.) Dr. Satriale, however, provided no specification as to the nature and degree of the limitation. When asked for "Supportive medical findings, if not otherwise included in the report," Dr. Satriale again provided no support for his finding. (R at 277.) The ALJ's decision to give less weight to the medical opinion of Dr. Satriale regarding crouching, which was not supported by any explanation, <u>was not outcome determinative</u>. *Plummer*, 186 F.3d at 429.

Dr. Sarpolis included an explanation as to her finding regarding Plaintiff's abilities, indicating she was aware that Plaintiff is able to take care of himself, clean, accomplish light repairs, hunt, fish, mow, and walk one-eighth of a mile. (R at 360.) Based on a review of his medical files, Dr. Sarpolis found that Plaintiff was limited due to musculoskeletal issues, but was able to crouch occasionally. (R at 357.) Dr. Reardon likewise reviewed the record, including records from Dr. Satriale, and reached the same conclusion as Dr. Sarpolis that Plaintiff is able to crouch occasionally. (R at 82-87.) Dr. Reardon specifically explained why he discounted Plaintiff's own statement of his limitations in reaching his conclusion. (R at 84-87.) In light of a review of the medical reports, the Court finds that the ALJ's decision to weigh the opinion of the

two state agency doctors over the unexplained opinion of Dr. Satriale is supported by substantial evidence, relevant evidence a reasonable mind might find adequate.

In light of the foregoing, any error committed by the ALJ in explicitly failing to explain its decision to discount the testimony of Dr. Satriale regarding crouching is harmless. This is particularly true in light of Plaintiff making no argument that the crouching limitation was outcome determinative. Plaintiff argues that the ALJ found he could only perform two occupations listed in the Dictionary of Occupational Titles and therefore the decision is tenuous, but Plaintiff makes no argument as to how a stricter crouching limitation would affect the determination that he could serve as an usher or laminating machine off-bearer. (Objs. at 7.) Plaintiff has failed to carry his burden demonstrating that any error was outcome determinative in the first instance, and the Court's thorough review of the record establishes that any error was not outcome determinative. *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). The Court overrules Plaintiff's objection.

### c. The ALJ committed no error in rejecting the opinion of Plaintiff's treating physician, Dr. McCabe, regarding lifting and carrying limitations. The Court affirms the opinion of the USMJ.

A treating physician's opinion is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the record]." 20 C.F.R. § 404.1527(c)(2). The ALJ may reject a treating source's opinion only "on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)). The ALJ is entitled to place greater reliance on the doctor's full medical opinion than his cursory answers and has the obligation to weigh medical evidence to choose between conflicting accounts. *Id.* at 430 (citing *Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992)).

In considering whether or not to afford a treating physician's opinion great weight, the ALJ should consider: (1) the length of the treatment relationship and the frequency of examination; (2) the treatment the source has provided and the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories; (3) the relevant evidence to support the opinion; (4) the consistency of the opinion with the entire

record; (5) whether the doctor is a specialist in the area in which he or she is offering the opinion; (6) other factors which support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)(i)-(ii), (c)(3)-(6). Simply put, an ALJ is "not free to employ [his or her] own expertise against that of a physician" if that physician "presents competent medical evidence." *Plummer*, 186 F.3d at 429.

Plaintiff objects that, because the ALJ rejected Dr. McCabe's limitations as being at odds with Dr. McCabe's own treatment notes and evaluations, "the ALJ rejected [Dr. McCabe's] limitations based on the ALJ's lay medical judgment." (Objs. at 7.) Plaintiff made the same argument before the USMJ. The USMJ reviewed the medical evidence in the administrative record and found that the ALJ's decision to afford less weight to Dr. McCabe's opinion was supported by substantial evidence. (R&R at 13-14.) The Court agrees with the USMJ. The ALJ fully explained his basis for his decision to give little weight to Dr. McCabe's opinion:

> Dr. McCabe's opinion is accorded little weight because the objective findings and symptoms documented in the doctor's own treatment notes and evaluations (Exhibit B10F) are not consistent with the limitations imposed. Specifically, throughout much of 2012, Dr. McCabe notes that the claimant had decreased range of motion of the lower back and neck with pain, midline tenderness of the cervical, thoracic, and lumbar spine, and normal neurological examination with normal sensation, coordination, muscle strength, and tone (Exhibit B10F). Additionally, Dr. McCabe notes on May 1, 2013, the date of the assessment, that the claimant reported that he is 'stable on current pain regimen' and has 'pain at 4/10 routinely which he is able to tolerate' (Exhibit B10F, p.57). Because it appears that Dr. McCabe relied predominately on the claimant's subjective complaints, which are not corroborated by evaluations, observations, or treatment notes (Exhibits B4F, B9F, B10F, B13F), Dr. McCabe's opinion does not reflect an independent assessment of the claimant's <u>maximum</u> level of functioning.

(R at 26.) Plaintiff objects that the ALJ's decision to credit Dr. McCabe's medical record regarding Plaintiff as a whole rather than the assessment itself is based on the ALJ's own lay medical judgment. Plaintiff ignores that the ALJ "has an obligation to weigh the medical evidence and make choices between conflicting medical evidence." *Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992). As long as that choice is supported by substantial evidence, the Court will not disturb the ALJ's decision.

A thorough review of the record provides substantial evidence for the ALJ's decision to give less weight to Dr. McCabe's assessment in light of the medical record as a whole. Included in the records provided by Dr. McCabe are indications that Plaintiff exercises regularly, (R at 375), possesses normal range of motion and strength (R at 377), denies muscle weakness (R at

383, 411), and exhibits normal muscle strength and tone (R at 383, 393, 411). In addition, Dr. McCabe found that Plaintiff's pain was tolerated at a 4/10, (R at 425), despite then concluding Plaintiff is unlikely to sustain regular employment due to intolerance to pain, (R at 434). Plaintiff's medical records are therefore in conflict with Dr. McCabe's assessment placing severe restrictions on Plaintiff's physical abilities. Further, unlike the medical records which were based on repeated visits and reports of multiple providers, the assessment was supported only by the patient's own reports. (R at 432.)

Plaintiff argues that the ALJ, in conflict with *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), rejected Dr. McCabe's assessment based on the ALJ's lay medical judgment. (Objs. at 7-8.) The Court agrees that an ALJ cannot reject a treating physician's opinion without contrary medical evidence and can only decide to give little weight to the treating physician's opinion if it lacks explanation. *Plummer*, 186 F.3d at 429. But, the ALJ and the USMJ pointed out how Dr. McCabe's assessment was directly contradicted by his own notes and the medical record, in addition to being contradicted by the patient's own statements regarding pain levels. (R at 26; R&R at 13-15.) Plaintiff entirely ignores that is exactly the responsibility of the ALJ to resolve these types of conflicts. *Williams*, 970 F.2d at 1187. In addition, the ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429. Here, the primary support for the assessment was based on Plaintiff's own reporting of his abilities. (R at 432-33.) An ALJ is permitted to limit the weight of a physician's opinion when that opinion is supported only by subjective complaints and is contradicted by substantial other evidence. Therefore, the ALJ's decision to resolve the conflict by giving more weight to the extensive medical records than Dr. McCabe's assessment based on Plaintiff's own statements is a decision supported by substantial evidence. *Hoyman v. Colvin*, 606 F. App'x 678, 680 (3d Cir. 2015) (upholding a nearly identical decision despite an identical objection). As the ALJ noted, Dr. McCabe himself found "normal neurological examination with normal sensation, coordination, muscle strength, and tone," which is consistent with numerous other medical records and only inconsistent with Dr. McCabe's assessment based on Plaintiff's statements. (R at 26.) Because it is the responsibility of the ALJ to decide between conflicting medical opinions and the decision was supported by substantial evidence, the Court overrules Plaintiff's objection.

### d. The ALJ committed no error in giving great weight to the opinions of state agency consultants, Drs. Sarpolis and Reardon. The Court affirms the opinion of the USMJ.

Plaintiff objects to "the ALJ's choice to give greater weight to the findings of two non-examining state agency consultants than to the opinions of the treating physicians." (Objs. at 8.) As a preliminary matter, the Court notes that a review of the ALJ's decision reveals that he did in fact give great weight to the opinion of Plaintiff's treating physician at the time Plaintiff was insured, Dr. Satriale. (*See* R at 27 ("In general, Dr. Satriale's assessment is given great weight because it is consistent with and supported by the record as a whole.".) In addition, the Court notes that the opinions of Drs. Sarpolis and Reardon mostly aligned with the opinion of Plaintiff's treating physician, Dr. Satriale. (R at 27.) With respect to the areas of disagreement where the ALJ did not give more weight to Dr. Satriale's opinion, the Court addressed that previously in sections (a) and (b). With respect to the ALJ not giving more weight to Dr. McCabe's opinion, the Court addressed that previously in section (c).

Despite the prior objections, Plaintiff again makes a general overarching objection to the ALJ's decision to weigh the findings of the state agency consultants over Plaintiff's treating physicians. As the Court noted, however, it was not in fact the case that state agency consultants were weighed more heavily than Plaintiff's treating physicians in every respect. To the extent the ALJ did weigh the opinions of the state agency consultants more heavily than Plaintiff's treating physicians, the Court has already found substantial evidence for that decision. And, in any event, there was substantial evidence for the decision to give great weight to the opinions of the state agency consultants. As the ALJ recognized, those opinions were largely consistent with the opinion of Plaintiff's treating physician, consistent with notes of physical examinations, consistent with Plaintiff's range of activities, consistent with Plaintiff only seeking pain relief via narcotics, and are founded on expertise. (R at 27.) Therefore, to the extent Plaintiff objects more generally to giving weight to the opinion of the state agency consultants, Plaintiff's objection is overruled.

### e. The ALJ committed no error in finding Plaintiff's testimony was not credible.

Pursuant to Social Security Ruling 96-7p, an ALJ must assess Plaintiff's credibility by considering objective medical evidence and (1) the individual's daily activities; (2) the location,

12

duration, frequency , and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul., 96-7p, 3; 20 C.F.R. § 404.1529(c)(3); *Rosenbaum v. Bernhart*, 2002 WL 32350020, at *6 (E.D. Pa. 2002). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." Soc. Sec. Rul., 96-7p.

In determining the credibility of Plaintiff's assertion of subjective pain, the Court must seriously consider Plaintiff's subjective complaints of pain, even if such claims are not fully supported by objective medical evidence. *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984) (citing *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Bittle v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971); *Taybron v. Harris*, 667 F.2d 412, 415 n. 6 (3d Cir. 1981)). In addition, while "[a]n ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence . . . the ALJ can reject such claims if he does not find them credible." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). The ALJ must explain his basis for rejecting a claimant's subjective testimony. *Id.*

In this case, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible," (R at 20), and concluded that "[t]he claimant experiences some symptoms and limitations; however, the record does not fully support the severity of the claimant's allegations." (R at 30.) The ALJ explained that "[t]he credibility of the claimant's allegations is weakened by his routine and conservative treatment and his failure to follow through with recommended treatment with specialists until 2013." (R at 27.) The ALJ thoroughly explained the medical evidence, (R at 20-27), and his ultimate decision to give less weight to Plaintiff's testimony:

> The objective findings of this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations and do not support the existence of limitations greater than the above listed residual functional

> capacity. The claimant's primary care physicians consistently found normal gait, full range of motion of the upper and lower extremities, and normal neurological examinations (Exhibits B4F, B10F). He did not consistently present with positive objective physical findings until 2013 and was able to be stabilized even in 2013 with the use of pain medication (Exhibit B10F). The claimant's description of the severity of the pain has been so extreme as to appear implausible (Exhibits B9F; B10F, p.14). Currently, the claimant is not participating in physical therapy, does not receive epidural injections for pain, does not consistently receive treatment from specialists, and has not had surgery for his lower back impairment. Additionally the claimant can ambulate effectively without a medically required hand-held assistive device. These factors support the above residual functional capacity and support the finding that the claimant is less than fully credible regarding his alleged symptoms and limitations.
>
> Moreover, the claimant described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. The claimant was able to work part-time at least a portion of the period he has been alleging disability and has been able to fish, hunt, and camp (Testimony and Exhibits B4F, B5F). In a Function Report dated November 3, 2011, the claimant reported that he can prepare meals, clean, do laundry, perform "light household repairs," do "very minimal mowing," care for his personal grooming and hygiene independently, drive a motor vehicle, and grocery shop (Exhibit B5E). In addition, as noted above, medical records during the half year immediately prior to the date last insured portray the claimant as, respectively, 1) moving trees, 2) being on a boat and 3) lifting and turning a mattress. The ability to perform these activities supports the above residual functional capacity of light and further supports the finding that claimant is less than fully credible regarding his alleged symptoms and limitations.

(R at 25-26.) The decision of the ALJ is well-reasoned, thoroughly explained, and supported by substantial evidence.

The first reason the ALJ gave for discounting Plaintiff's testimony was because it conflicted with the objective findings at medical visits that Plaintiff possesses normal gait, full range of motion, and normal neurological examinations (including normal muscle tone and strength). (R at 25.) A review of the record provides substantial evidence for this determination. Medical records demonstrate that Plaintiff routinely exhibited normal gait (R at 304, 337), possessed normal range of motion and strength (R at 293, 324, 327, 334, 337, 377), did not show muscle weakness (R at 293, 297, 324, 383, 411), exhibited normal muscle strength and tone (R at 383, 393, 411) and had normal neurological examinations (R at 290, 293, 296, 313, 316, 337). The consistency and numerosity of the medial records contradicting Plaintiff's testimony provides substantial evidence for discrediting Plaintiff's testimony regarding his abilities.

14

The second reason the ALJ gave for discounting Plaintiff's testimony was because of Plaintiff's conservative treatment, in that for most of the time Plaintiff's only treatment involved narcotics. Plaintiff argues that conservative treatment is not an acceptable reason to reject testimony regarding pain and cites to *Sykes v. Barnhart*, 228 F.3d 259, 266, n.9 (3d Cir. 2000). (Objs. at 9.) Plaintiff, however, ignores that *Sykes* found evidence of conservative treatment was insufficient to discredit the claimant's testimony where conservative treatment was the *only* explanation for discrediting the claimant's testimony. *Sykes*, 228 F.3d at 266, n.9. Here, Plaintiff's failure to pursue treatment options beyond narcotics is one of many explanations provided by the ALJ for discrediting Plaintiff's testimony. (R at 25-26.) It is permissible to consider conservative treatment as one reason for discounting Plaintiff's claims of severe pain. *See, e.g., Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008) (finding ALJ properly reasoned conservative treatment indicated impairments were not as debilitating as claimed); *Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) ("[Plaintiff's] conservative treatment history supports the ALJ's determination that Phillips' subjective complaints of pain were not entitled to full credence."); *Cartagena v. Comm'r of Soc. Sec.*, 29 F. App'x 883, 886 (3d Cir. 2002) (upholding ALJ's finding that claimant's complaints were not credible considering objective medical evidence, conservative treatment, and daily living activities). Therefore, while conservative treatment cannot be the *only* reason to discount Plaintiff's testimony, because it is the conservative treatment together with the medical evidence and Plaintiff's own activities, like in *Cartagena*, it is a permissible reason here.

The third reason the ALJ gave for discounting Plaintiff's testimony was because of Plaintiff's daily living activities, based on both Plaintiff's own admissions and medical records. Plaintiff objects that the activities cited by the ALJ are not inconsistent with or reason to disbelieve Plaintiff's testimony. (Objs. at 9.) The USMJ refused to evaluate Plaintiff's identical argument because it would require re-weighing the evidence. (R&R at 18.) Plaintiff now argues that it does not require a reweighing of evidence, just the recognition that the ALJ's claim fails "as a matter of simple logic." (Objs. at 9.) Plaintiff does not further explain the logical failure, but, in any event, this Court reviews the ALJ's determination to ensure it is supported by substantial evidence.

The activities on which the ALJ relied in finding that Plaintiff's claims regarding the debilitating extent of his pain were not credible include: fishing, hunting, camping,[3] flipping a mattress, moving trees, preparing meals, cleaning, light mowing, grocery shopping, driving, and maintaining his hygiene. (R at 27.) The ALJ found that these activities are inconsistent with Plaintiff's claimed limitations and therefore Plaintiff's daily living activities are grounds for discrediting Plaintiff's claim limitations. This is a decision supported by substantial evidence. Plaintiff himself admitted that he helps his fiancée dress, shares in household duties, feeds and walks three small dogs, prepares easy meals daily, cleans, does laundry, completes light household repairs, mows twice a month for an hour or less, goes outside daily, drives a car, goes grocery shopping, fishes, does light hunting, and walks unassisted except for long distances. (R at 231-236.) In addition, Plaintiff's medical records demonstrate that he exercised regularly (R at 375), went boating (R at 315), moved trees (R at 290), lifted and flipped a mattress (R at 295), and used a tractor to move a tree (R at 297). This, particularly when paired with Plaintiff's physical exams and conservative treatment, is substantial evidence for discrediting Plaintiff's statements regarding his limitations. Therefore, after a review of the record as a whole, the Court overrules Plaintiff's objection.

## IV. Conclusion

For the foregoing reasons, the Court overrules Plaintiff's objections, adopts the USMJ's R&R, and denies Plaintiff's request for review.

BY THE COURT:

/s/ C. Darnell Jones, II
C. DARNELL JONES, II    J.

---

[3] Plaintiff states that nowhere in the record is there a reference to camping. (Objs. at 5.) Plaintiff did not use the term "camping," and did not refer to camping in the recreational sense, however, Plaintiff did state that he "pretty much lived in the woods in a tent for a while." (R at 51.)